UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AARON W.,

                                    Plaintiff,

v.                                                                6:24-CV-01440
                                                                     (FJS/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:


HILLER COMERFORD                          JUSTIN M. GOLDSTEIN, ESQ.
INJURY DISABILITY LAW
  *Attorneys for Plaintiff*
6000 North Bailey Avenue - Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.               KRISTINA D. COHN, ESQ.
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge


### REPORT-RECOMMENDATION

Plaintiff Aaron W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his application for Supplemental Security Income ("SSI") benefits.

(Dkt. No. 1.)  This matter was referred to me for Report and Recommendation by the Honorable

Frederick J. Scullin, Jr., Senior United States District Court Judge, pursuant to 28 U.S.C. §

636(b) and Local Rule 72.3(d). (Dkt. Nos. 4, 5.)  This case has proceeded in accordance with

General Order 18.  Currently before this Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11, 13, 14.)  For the reasons set forth below, this Court recommends that the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the Commissioner's decision for further administrative proceedings.

## I.    PROCEDURAL HISTORY

On December 23, 2022, Plaintiff protectively filed an application for SSI, alleging disability dating from December 1, 2021. (Administrative Transcript ("T.") 156-172.)  His application was denied initially on August 29, 2023, and his request for administrative reconsideration was denied on February 13, 2024. (T. 63-82.)  Plaintiff's request for a hearing was granted. (T. 83-85. 131-146.)  On August 23, 2024, Plaintiff and vocational expert ("VE") Christine DiTrinco testified by telephone before Administrative Law Judge ("ALJ") Jeremy Eldred. (T. 28-39.)  The ALJ issued an unfavorable decision on September 19, 2024. (T. 12-27.) The Appeals Council denied Plaintiff's request for review on October 4, 2024. (T. 1-6.)

Plaintiff commenced this proceeding on November 27, 2024 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts

2

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685

3

F.2d 60, 62 (2d Cir. 1982).

### B.    Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.    <u>FACTS</u>

As of the date of the ALJ's decision, Plaintiff was 47 years old. (T. 32, 156.)  He attended

regular education classes in high school, but did not obtain a degree. (T. 192.)  He subsequently

obtained a GED. (*Id*.)  At the time of his December 2023 application, Plaintiff was residing in an

apartment. (T. 206.)  At his August 23, 2024 hearing, Plaintiff testified that he was currently

residing at a homeless shelter. (T. 32.)

Plaintiff's work history includes short-term positions as a factory worker and an

automotive detailer. (T. 33, 193.)  He asserts that he is unable to work due to chronic neck and

back impairments that did not improve after spinal surgery and epidural injections. (T. 33, 302,

305.)  He described pain and numbness that ran from his shoulders to his fingertips, resulting in

difficulty bending his neck or sitting or standing for extended periods. (T. 33, 305, 779.)

Plaintiff suffered a heart attack in March 2023 that required implantation of a cardiac stent. (T.

319, 780.)  Plaintiff testified that his recovery from this surgery further limited his physical

activity.  (T. 33-34, 779-780.)

The record includes Plaintiff's relevant medical history.  Rather than summarizing the

records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's

arguments.

## IV.    THE ALJ'S DECISION

Based upon his review of the administrative record, the ALJ found at step one that

Plaintiff had not engaged in substantial gainful activity after December 23, 2022, the date of his

application for benefits. (T. 17.)  At step two, the ALJ found that Plaintiff has the following

severe impairments: "stenosis of the cervical spine; degenerative disc disease, osteophytes, and

stenosis of the lumbar spine; chronic obstructive pulmonary disease (COPD); coronary artery

disease; and obesity." (T. 17-18.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or

in combination did not meet or medically equal the severity of a listed impairment, including

Listing 1.15 (disorders of the skeletal spine resulting in compromise of nerve roots), Listing 1.16

(lumbar spinal stenosis resulting in compromise of the cauda equina), Listing 3.02 (chronic

respiratory disorders), and Listing 4.04 (ischemic heart disease). (T. 18.)  Next, the ALJ found

that Plaintiff could perform sedentary work with certain limitations. (T. 18-21.)  Specifically, the

ALJ found that Plaintiff:

> can climb, balance, stoop, kneel, crouch, or crawl occasionally; can reach
> overhead frequently; can finger objects frequently; and must avoid exposure to
> concentrated dust, odors, fumes, or gases.

(T. 18.)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's

symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

416.929" and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that he

considered opinion evidence and prior administrative medical findings in accordance with 20

C.F.R. § 416.920c. (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding

pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record and found "the evidence does not fully support the claimant's allegations regarding the extent of the functional limitations caused by his symptoms." (T. 19.)

At step four, the ALJ found that Plaintiff is unable to perform any of his past relevant work. (T. 21.)  Relying on the VE testimony, the ALJ next found that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform. (T. 22-23.) Accordingly, the ALJ found that Plaintiff had not been disabled from his application date of December 23, 2022 through the date of the ALJ's decision. (T. 23.)

## V.    <u>ISSUES IN CONTENTION</u>

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective testimony due to a lack of follow-up treatment for back pain and cardiac symptoms, without making the necessary inquiry into Plaintiff's reasons for failing to comply with recommended medical care. (Dkt. No. 11 at 9-20, Dkt. No. 14 at 7-9.)  Plaintiff also contends that the ALJ failed to properly evaluate the medical opinions in the record, particularly the July 18, 2023 opinion of Dr. Rita Figuero, who performed a consultative physical examination of Plaintiff, and the June 28, 2024 opinion of Dr. Pete Htwe, who had recently taken over as Plaintiff's primary care physician. (Dkt. No. 11 at 20-25; Dkt. No. 14 at 1-7, 9-10.)  The Commissioner contends that the ALJ's analysis of the medical opinion evidence, Plaintiff's testimony, and the ultimate disability determination were supported by substantial evidence. (Dkt. No. 13 at 7-18.)

For the reasons set forth below, this Court agrees with Plaintiff that the ALJ's disability determination was not supported by substantial evidence and recommends that the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand for further administrative proceedings.

## VI.    RFC AND MEDICAL OPINION EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must

also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of

---

[2] Plaintiff's application was filed on December 23, 2022. (T. 156-171.) Thus, the new regulations apply in this case.

the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.    Evaluating Testimonial Evidence

Assessment of a claimant's subjective complaints about his or her symptoms or the effect of those symptoms on the claimant's ability to work involves a two-step process. Where a claimant complains that certain symptoms, including pain, limit his or her capacity to work, the ALJ is required, first, to determine whether the claimant suffers from a "medically determinable

10

impairment[ ] that could reasonably be expected to produce" the symptoms alleged. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Assuming the ALJ finds such an impairment, then the ALJ must take the second step of "evaluat[ing] the intensity and persistence of [the claimant's] symptoms, including pain," considering "all of the available evidence," to determine "how [the] symptoms limit [the claimant's] capacity for work." *Id*. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ must consider all of the available evidence, and must not "reject [ ] statements about the intensity and persistence of [ ] pain or other symptoms ... solely because the available objective medical evidence does not substantiate [the claimant's] statements." *Id*. §§ 404.1529(c)(2), 416.929(c)(2). Instead, where the claimant's contentions regarding his or her symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate those statements in relation to the other evidence, in order to determine the extent to which the claimant's symptoms affect his or her ability to do basic work activities. *Id*. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4).

While an ALJ "is required to take [a] claimant's reports of pain and other limitations into account" in evaluating his or her statements, an ALJ is "not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). To the extent the ALJ determines that the claimant's statements are not supported by the medical record, however, the ALJ's decision must include "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence," and be "clearly articulated" for a subsequent reviewer to assess how the adjudicator evaluated the individual's symptoms. SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *8 (October 25, 2017).

The factors that an ALJ should consider in evaluating the claimant's subjective complaints, where they are not supported by objective medical evidence alone, are: (1) the

11

claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms;

(3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of

any medications taken to alleviate the symptoms; (5) any treatment, other than medication, that

the claimant has received for relief of the symptoms; (6) any other measures that the claimant

employs to relieve the symptoms; and (7) other factors concerning the claimant's functional

limitations and restrictions as a result of the symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii),

416.929(c)(3)(i)-(vii).

**B.    Summary of the Medical Opinion Evidence**

The administrative record contains several medical opinions addressing Plaintiff's

physical functional limitations.  This Court will summarize those opinions in chronological

order.

**1.  Consultative Examiner Dr. Figueroa's July 2023 Opinion**

Dr. Rita Figueroa performed a consultative physical examination of Plaintiff on July 18,

2023. (T. 779-783.)  Prior to the examination, Plaintiff described his COPD triggers, his chronic

neck and lower back pain, and his recovery following his March 2023 heart attack. (T. 779-780.)

During the examination, Dr. Figueroa observed that Plaintiff appeared in no acute distress

but had an antalgic and slow gait even when using a cane. (T. 781.)  He did not require any

assistance changing for the examination, getting on and off the examination table, or rising from

a chair. (*Id.*)  Plaintiff had a reduced range of motion in the cervical and lumbar spine but full

strength in the upper and lower extremities. (T. 782.)  Plaintiff demonstrated sufficient hand and

finger dexterity to use zippers and buttons but had difficulty tying a knot. (T. 782.)  Dr. Figueroa

also performed a pulmonary function test that yielded normal results. (T. 782-786.)

Based on this examination, Dr. Figueroa opined that Plaintiff had a "marked limitation

for walking, sitting, standing" as well as "kneeling, squatting, [and] crawling." (T. 783.)  She further opined that Plaintiff had a "severe limitation" for repetitive bending, lifting and carrying, and a "moderate to severe" limitation for prolonged sitting. (*Id*.)  She recommended that Plaintiff avoid ladders, unprotected heights, and pulmonary irritants. (*Id*.)

The ALJ found Dr. Figueroa's opinion to be unpersuasive, describing it as unsupported by many of the consultative examination results. (T. 20-21.)  The ALJ also found the marked and severe limitations assessed by Dr. Figueroa to be inconsistent with either of the non-examining consultant opinions as well as Plaintiff's treatment history showing noncompliance with recommended follow-up care. (T. 21.)  In particular, the ALJ rejected Dr. Figueroa's opinion that Plaintiff required a cane in light of contrary evidence that assistive devices were not medically necessary. (*Id*.)

## 2. State Agency Consultant Opinions

On August 29, 2023, Dr. H. Miller, a state agency medical consultant, reviewed Plaintiff's then-current treatment records and offered an opinion regarding his physical functional limitations. (T. 44-46.)  Dr. Miller opined that Plaintiff could occasionally lift up to ten pounds and frequently lift lesser weight. (T. 44.)  In the consultant's opinion, Plaintiff was able to stand and/or walk for a total of about two hours and sit for a total of about six hours over the course of a typical workday with normal breaks. (*Id*.)  Dr. Miller further opined that Plaintiff could occasionally stoop, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and frequently balance, kneel, crouch, reach overhead on the right side, and perform fine manipulation with his right hand. (T. 44-45.)  Dr. Miller did not identify any other postural or reaching limitations but recommended that Plaintiff avoid concentrated exposure to respiratory irritants in light of his diagnosed COPD. (*Id.*)

In a brief narrative, Dr. Miller summarized the treatment and examination notes that formed the opinion's basis, including evaluations of Plaintiff's back and neck pain from October 2022, December 2022, January 2023, and February 2023; cardiology notes from March 2023 and April 2023; and Dr. Figueroa's July 2023 consultative examination. (T. 45-46.) The state agency consultant also referenced Plaintiff's description of his activities of daily living. (T. 46.)

On February 12, 2024, Dr. G. Wang reviewed Plaintiff's updated medical records as part of his request for reconsideration and agreed with Dr. Miller's opinion. (T. 49-54.) In the accompanying narrative, Dr. Wang cited clinical notes in which Plaintiff described himself as "doing well" with no recurrence of chest pain, no shortness of breath, and well controlled hypertension. (T. 53.)

The ALJ deemed the opinions from Dr. Miller and Dr. Wang to be "persuasive," with each supported by a "detailed narrative rationale" that cited "supporting objective medical evidence and other relevant evidence from the record." (T. 20.) In addition to being internally consistent with each other, the ALJ also found the opinions consistent with the lack of follow-up care in the record and the evidence of "normal" pulmonary functioning. (*Id*.) He concluded that each was consistent with an ability to perform less than the full range of sedentary work. (*Id*.)

### 3. Dr. Htwe's June 28, 2024 Opinion

On June 28, 2024, Dr. Peter Htwe prepared a Medical Source Statement based upon his direct examinations of Plaintiff. (T. 1040-1042.) The record shows that Plaintiff first established treatment with Dr. Htwe in April 2024 and attended a follow-up appointment with him in June 2024. (T. 984.)

Utilizing a check box form with some supporting narrative, Dr. Htwe opined that Plaintiff could sit for thirty minutes at one time and could stand for ten minutes at one time before

14

needing to change positions. (T. 1040.)  He further opined that Plaintiff could sit for less than two hours total and could stand/walk for less than two hours total over the course of a workday. (*Id*.)  In Dr. Htwe's opinion, Plaintiff could rarely lift items less than ten pounds and never lift heavier weights. (T. 1041.)  He also opined that Plaintiff could rarely look down and could only occasionally look up or turn his head to either side. (*Id*.)  Addressing postural limitations, Dr. Htwe opined that Plaintiff could never twist, stoop, crouch, or climb ladders, and could only occasionally climb stairs. (*Id*.)

In addition, Dr. Htwe opined that Plaintiff required a job that allowed him to shift positions at will from sitting, standing, and walking, and would need to take four to five unscheduled breaks during the workday. (T. 1040-1042.)  He also opined that Plaintiff was likely to be absent from work more than four days per month, and that his pain and other symptoms would "constantly" interfere with his ability to perform simple work tasks. (T. 1042.)

In an accompanying narrative, Dr. Htwe attributed most of Plaintiff's physical impairments to spinal cord compression but explained that surgery was not yet a viable option due to Plaintiff's coronary artery disease. (T. 936, 1042.)  He also opined that Plaintiff's chest pains were triggered by "stress of any kind," making him incapable of performing even low stress jobs. (T. 1040.)

The ALJ found Dr. Htwe's opinion to be unpersuasive, because it was "not strongly supported by the information on the opinion document itself" or the physician's treatment notes. (T. 21.)  In particular, the ALJ found no support in the available cardiology and neurosurgical specialists' notes for Dr. Htwe's conclusion that Plaintiff could not have back surgery until his cardiovascular health improves. (*Id*.)  The ALJ also deemed Dr. Htwe's opinion to be inconsistent with the more persuasive opinions of Dr. Miller and Dr. Wang, inconsistent with

Plaintiff's lack of ongoing treatment for his neck and back disorders, inconsistent with the normal results from the July 2023 pulmonary function test, and inconsistent with the lack of evidence of ongoing cardiac symptoms. (*Id*.)

      **C.**    **The ALJ Failed to Investigate the Reasons for Plaintiff's Failure to Follow Through with Recommended Treatment.**

At his August 23, 2024 hearing, Plaintiff testified that he was residing at a homeless shelter. (T. 32.) This homeless shelter was still Plaintiff's listed address at the time of the ALJ's September 19, 2024 decision. (T. 12.) Plaintiff contends that the ALJ erred by failing to inquire whether Plaintiff's housing status impacted his ability to obtain medical treatment. This Court agrees, because the ALJ based his evaluation of Plaintiff's testimony and the medical opinion evidence in large part on Plaintiff's failure to seek recommended follow-up care for his back pain and cardiac problems.

SSR 16-3p provides, in relevant part:

> if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. **We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.** We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p; *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01, at *14171, 2017 WL 5180304, at *9 (March 16, 2016) (emphasis supplied).

This is not a new requirement. Prior to SSR 16-3p, SSA operated under a similar ruling that an "adjudicator must not draw any inferences about an individual's symptoms and functional effects from a failure to seek out or pursue medical treatment without first considering any

explanations that the individual may provide, or other information in the case record, that may

explain infrequent or irregular medical visits, or failure to seek medical treatment."  SSR 96-7p,

*Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an*

*Individual's Statements*, 1996 WL 374186 at *7 (July 2, 1996).  Numerous courts in this district

have found the absence of such inquiry merits remand.  *Hamilton v. Colvin*, 8 F. Supp. 3d 232,

240 (N.D.N.Y. 2013) ("To the extent the ALJ used the lack of treatment as a basis for

discounting Plaintiff's testimony concerning the extent of his impairment, the ALJ was obliged to

consider whether the lack of treatment during that time period had another cause."); *Ebert v.*

*Astrue*, No. 1:07-CV-1166 (LEK/DEP), 2009 WL 3764219, at *7 n.6 (N.D.N.Y. Nov. 10, 2009)

(noting that any negative inference regarding a lack of treatment can be explained where the lack

of treatment was due to finances).

　　　　Published Social Security Rulings like SSR 16-3p are "binding on all components of the

Social Security Administration."  *Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019)

(citing *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984)); *see*

*also Jessica Lynn V. v. Comm'r of Soc. Sec.*, No. 6:24-CV-43 (BKS/CFH), 2024 WL 5454786, at

*7 n.6 (N.D.N.Y. Dec. 2, 2024), *rep't and rec. adopted*, 2025 WL 542566 (N.D.N.Y. Feb. 19,

2025) ("Social Security Rulings do not have the force of law but are binding on 'all components

of the Social Security Administration.'") (quoting *Heckler*).  Once the issue of Plaintiff's

homelessness became apparent, the ALJ's failure to make any inquiry into its potential impact on

Plaintiff's ability to obtain medical care was error.  *See Escalera v. Comm'r of Soc. Sec.*, No. 19-

CV-21 (HBS), 2020 WL 2465085, at *5 (W.D.N.Y. May 13, 2020) (finding ALJ erred by failing

to expressly consider whether Plaintiff's documented eviction and homelessness impacted her

ability to obtain medical care); *see also Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000) ("It

would fly in the face of the plain purposes of the Social Security Act to deny claimant benefits because he is too poor to obtain additional treatment that had proved unhelpful.")

This error may be excused as harmless where the ALJ relied on a number of other factors in assessing Plaintiff's subjective complaints and functional limitations. *See Smith v. Berryhill*, No. 17-CV-6465L, 2018 WL 5266794, at *2 (W.D.N.Y. Oct. 23, 2018) (finding harmless error where ALJ failed to consider impact of Plaintiff's intermittent homelessness on his ability to comply with recommended treatment because the ALJ did not "rely heavily" on this issue in assessing Plaintiff's testimony). That excuse does not exist in this case, where the ALJ's analysis of Plaintiff's functional limitations heavily relied on his cancellation or failure to appear for recommended epidural injections for back pain in February 2023 and cardiac rehabilitation appointments following his March 2023 heart attack. (T. 19, 305, 346, 804, 889-917.) Indeed, as discussed below, the ALJ cited this lack of follow-up care as a primary factor in his rejection of the most restrictive medical opinion evidence and his decision to rely on the two least restrictive opinions instead. (T. 19-21.)

Because the ALJ conducted no inquiry into the length of time that Plaintiff was homeless during the relevant period and its potential impact on Plaintiff's ability to obtain medical care, this Court recommends remand for further administrative proceedings to allow for such inquiry, in accordance with SSR 16-3p.

### D.    The ALJ Failed to Properly Evaluate the Persuasiveness of the Medical Opinion Evidence.

"At their most basic, the amended regulations require that the ALJ explain [his] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*,

No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021).  An ALJ's

failure to explain the supportability and consistency of the medical opinions in the record is

procedural error.  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019*); see also Loucks v.

Kijakazi,* No. 21-CV-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the

ALJ committed procedural error by failing to explain how it considered the supportability and

consistency of medical opinions in the record").  However, the Second Circuit has recently

clarified that an ALJ's procedural error in failing to explain how he or she "considered the

supportability and consistency of medical opinions in the record" does not necessarily preclude

affirmance of the Commissioner's decision.  *Loucks*, 2022 WL 2189293, at *2.  As the *Loucks*

decision explained, it is well-settled that "[d]espite [an] ALJ's procedural error," a reviewing

court can affirm if "a searching review of the record assures [the court] that the substance of the

[regulation] was not traversed."  *Id*., 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96).

Thus, while a reviewing court may not affirm the Commissioner's decision based on an

impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the

relevant factors can be gleaned from the ALJ's decision as a whole.  *See, e.g. John L.M. v.

Kijakazi,* No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y. August 18,

2022); *Ricky L. v. Comm'r Soc. Sec*., No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June

27, 2022).

 The ALJ found the opinions of Dr. Miller and Dr. Wang to be persuasive due to their

supporting narrative, the consistency between the two non-reviewing consultants' opinions, and

the consistency between those opinions and "Plaintiff's lack of ongoing treatment for his neck

and back disorders." (T. 20.)  Similarly, the ALJ deemed the opinions from Dr. Figueroa and Dr.

Htwe to be unpersuasive, finding them unsupported by their treatment and examination notes,

inconsistent with the Miller and Wang opinions, and inconsistent with Plaintiff's lack of ongoing treatment. (T. 20-21.)

As previously discussed, the ALJ's emphasis on Plaintiff's lack of medical treatment must be revisited on remand and may influence the ALJ's evaluation of the medical opinion evidence.  In addition, a separate error in the ALJ's evaluation of the consistency of the medical opinion evidence independently merits remand.  The courts in this Circuit have recognized that an ALJ should not consider the persuasiveness of each medical opinion "in a vacuum," but must adequately account for the consistency of the various opinions with each other.  *See Mallorie M. v. Comm'r of Soc. Sec.*, No. 3:21-CV-891 (MAD/ATB), 2022 WL 19078137, at *12 (N.D.N.Y. December 22, 2022) (collecting cases), *rep. rec. adopted*, 2023 WL 2563209 (N.D.N.Y. March 17, 2023); *Ingrid T.G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-5651 (GRJ), 2022 WL 683034, at *8 (S.D.N.Y. March 8, 2022) (". . . in finding the assessments of disabling pain and phobias unpersuasive, the ALJ was required to address and account for the fact that the treating providers were united in their belief that Plaintiff's symptom experience was plausible, pervasive, and preclusive of sustained work activity.").  The ALJ took steps in this direction by separately comparing the opinions of Dr. Figueroa and Dr. Htwe, which each identified marked or significant physical limitations, with the less restrictive opinions issued by Dr. Miller and Dr. Wang. (T. 21.)

However, the ALJ never expressly considered the consistency between the Figueroa and Htwe opinions.  This was error.  *See Gary F. v. Comm'r of Soc. Sec.*, 2022 WL 16540354, at *3 (W.D.N.Y. October 28, 2022) (finding ALJ erred when he "did not even acknowledge the substantial similarities between" two opinions).  Such error has a greater potential for harm in a case like this, where Dr. Figueroa and Dr. Htwe provided the only opinions derived from direct

20

examination of Plaintiff. District courts in the Second Circuit recognize the "foundational nature" of direct observation of a patient, and "consistency with those observations" is a factor in evaluating the value of a medical opinion. *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *8 (D. Vermont July 14, 2020) (remanding where ALJ relied upon opinion of non-examining consultant who had no opportunity to review treating source opinions that described greater restrictions). In addition, neither of the non-examining consultants relied upon by the ALJ had an opportunity to review Dr. Htwe's opinion or his treatment notes. *See Danette Z. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1273 (ATB), 2020 WL 6700310, at *8 (N.D.N.Y. November 13, 2020) (remanding, in part, due to non-examining consultant's inability to review later treating source opinion).

It is well-established that ALJs are not required to "reconcile every conflicting shred of medical testimony." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). However, it is equally true that ALJs must discuss the evidence and factors "crucial" to the disability determination with "sufficient specificity to enable [this Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)). Put another way, an ALJ must "build an accurate and logical bridge from the evidence to her conclusion to enable a meaningful review." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Because the ALJ's September 19, 2024 decision failed to build that accurate and logical bridge, this Court recommends remand to allow the ALJ to inquire into the reasons for Plaintiff's lack of follow-up care, to more adequately explain the consistency factors with regard to the medical opinion evidence, and to further develop the record as appropriate. Due to the gaps in

the ALJ's analysis, a searching review of the record does not alter this Court's recommendation.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED;** and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    January 20, 2026
          Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge